RANEY *v.* RAULSTON, COUNTY JUDGE

5-3428                                                    385 S. W. 2d 651

Opinion delivered January 11, 1965

*J. Nelson Truitt, N. J. Henley,* for appellant.

*Smith, Williams, Friday & Bowen,* By: *Herschel H. Friday* and *John C. Echols,* for appellee.

CARLETON HARRIS, Chief Justice. This question on this appeal is whether a certain building proposed to be erected in Jasper, county seat of Newton County, can be financed and equipped under the authority of Amendment No. 17 of the state constitution, as amended by Amendment No. 25. Amendment No. 17 authorizes the qualified electers of each respective county in the state to vote on the question of the construction or extension of any county courthouse or county jail, and authorizes the levy of a tax (limited by the amendment) to defray the costs. Amendment No. 25 extends this authority to include the construction of county hospitals. At a special election held on December 10, 1963, a majority of the voters of Newton County voted in favor of constructing and equipping a building designated as a county hospital

for Newton County in order to provide needed hospitalization, medical, and nursing services for the citizens of the county. Procedural steps taken before and after the election are not questioned, and the only contention for reversal is that the county lacks the basic authority, under Amendment No. 17 (as amended), to construct and equip the sort of building that has been approved by the electors. The proposed building will contain thirty beds, ten of which, with the related bedside equipment and central facilities will meet the requirements for licensing as a ten-bed hospital under Act 414 of 1961 (hereinafter discussed), and the remaining twenty beds, with related bedside equipment and central facilities, while not meeting the minimum requirements of that act for licensing as a hospital, will qualify for licensing as a twenty-bed nursing home.

Appellants assert that a combination hospital and nursing home is not a hospital within the meaning of Amendment No. 17 (as amended), and that the county accordingly has no authority to construct this type of building. Suit was instituted against the county judge, praying that he be enjoined and restrained from calling the levying court of the county into session for the purpose of levying the aforesaid tax, and that he be further enjoined from issuing any bonds under the purported authority of Amendment No. 17 (as amended). After the filing of an answer, testimony was taken, and, at the conclusion thereof, the complaint was dismissed and appellee's prayer for a declaratory judgment to the effect that the building could be constructed and equipped, under the authority of Amendment No. 17 (as amended), was granted. From the decree entered, appellants bring this appeal.

In seeking a reversal, appellants principally rely on the provisions of Act 414, Ark. Stat. Ann. § 82-328 (Supp. 1963), which defines "hospital" and "nursing home."[1] Under that act, the definitions are as follows:

[1] The specific intent of the act is stated as vesting "sole authority to license hospitals and nursing homes in the State Department of Public Health." It would appear also that one of the purposes of the act was to insure full utilization of Hill-Burton funds.

"(d)  'Hospital' means a public health center, a general, tuberculosis, mental or chronic disease hospital, or a related facility such as a laboratory, out-patient department, nurses home or training facility, or a central service facility operated in connection with a hospital. An establishment furnishing primarily domiciliary care is not within this definition. * * *

"(f)  'Nursing Home' means and shall be construed to include any building, structure, agency, institution, or other place, for the reception, accommodation, board, care or treatment of two [2] or more unrelated individuals who, because of age, illness, blindness, disease, or physical or mental infirmity, are unable sufficiently or properly to care for themselves, and for which reception, accommodation, board, care or treatment, a charge is made, provided, the term 'Nursing Home' shall not include the offices of private physicians and surgeons, boarding homes, hospitals, or institutions operated by the Federal government."

Admittedly, under these definitions, the part of the proposed building to be devoted to a "nursing home," would not qualify as a general hospital.

Appellee argues that in passing Act 414, it would not appear that the Legislature had any reference to, or thought of, Amendment No. 17 in defining the terms, heretofore referred to. Rather, it is pointed out that the definitions included are controlling only "as used in this act." It is mentioned, as previously stated, that one of the purposes of the legislation was to acquire the use of Hill-Burton funds. Ark. Stat. Ann. §§ 82-335 and 82-336 (Supp. 1963) both refer to the fact that any construction program shall be carried out "in accordance with regulations prescribed by the Federal act." In other words, the cited definitions are those which meet the standards of Federal requirements for Federal aid, which might be given for the construction of hospitals or nursing homes.[2] There is no reference, at any place in the act,

---

[2] In the present instance, the estimated cost of construction of the building is $250,000.00, of which the county is to furnish $115,000.00, and the balance is to be furnished by the proper agency of the Federal government.

to Amendment No. 17, or to the method of acquiring funds as set forth in that amendment.

It is also argued that a definition adopted in 1961 could not possibly have any effect upon an amendment adopted in 1938; that, to determine the intent of the people in passing Amendments No. 17 and No. 25, it would be necessary to use the widely recognized definition of "hospital" in use at that time. Appellee cites a definition of "hospital" from Webster's New International Dictionary, 2nd Edition (Published in 1935), which he also asserts to be inclusive of the same elements and substance used in the definition of nursing homes found in Act 414. It is further asserted that the Legislature is not empowered to add to, or take from, the language of a constitutional amendment adopted by the people, unless that authority is granted in the amendment (*Kitchens* v. *Paragould,* 191 Ark. 940, 88 S. W. 2d 843), and that Amendment No. 17, as amended, is complete within itself, self-executing, and requires no statutory implementation. It is not incumbent that we comment upon these arguments, for it is not necessary in deciding this litigation, to determine whether the construction of a building, housing *only* a "nursing home" (as defined in Act 414), could properly or validly be built under the provisions of, and the authority of Amendment No. 17, and we do not pass on that issue.

At the outset, let it be stated that in construing provisions of the constitution, we endeavor to effectuate as nearly as possible the intent of the people (as it may be ascertained from the language of the provision) in passing the measure, and, if necessary, as a means of attaining that end, a liberal interpretation will be warranted. *Walton* v. *Arkansas Construction Commission,* 190 Ark. 775, 80 S. W. 2d 927. Under the admitted facts, a part of the building, even under Act 414, will qualify as a "hospital," and will include such facilities as surgery, x-ray and delivery rooms, and other facilities ordinarily found in a general hospital. The equipment in the balance of the hospital will be such as to provide for those persons who

are not in need of emergency treatment, but who, because of physical or mental infirmities, are in need of care. Actually, it will be noted that both the definitions of "hospital" and "nursing home" very clearly denote buildings used for the service of *persons who are afflicted with some type of illness or infirmity.* In other words, the "nursing home" facility is not simply a "boarding home," and may not be used as such; board is only incidental to the other services rendered. It appears from the testimony that the only reason that the entire thirty-bed unit will not be able to qualify as a "hospital" (as defined by Act 414) is that there will not be sufficient funds to provide the equipment necessary for a general hospital. It is evident that many hospital services will be provided under the "nursing home" unit, and if additional monies are ever provided, it can be easily converted to general hospital status. In *Kervin* v. *Hillman, County Judge,* 226 Ark. 708, 292 S. W. 2d 559, the facts reflected that a main hospital was to be located in Fordyce, the county seat, "with emergency units thereof in Sparkman and Carthage." After the project was approved by the voters, and the tax levied, Kervin, a property owner and taxpayer in Dallas County, filed a suit to restrain the County Judge from proceeding further in the sale of the bonds, and to restrain the collector from proceeding with the collection of the tax. It was asserted by appellant that the "emergency units are not complete hospitals but are small units each providing two beds designed for and intended to meet immediate and emergency temporary needs only for first-aid treatment for their respective geographical areas, these geographical areas being some distance from the hospital at Fordyce, and that said patients receiving first-aid treatment in these small units will either be discharged or prepared by such treatment for admission to the hospital at Fordyce. * * * that Amendment No. 17, as amended, contemplates the construction of a single hospital unit to be located at the county seat and does not contemplate or authorize the construction of such emergency units." We held against this contention, stating: "It is obvious that the real purpose of Amendment No. 17 (as

amended) was to make it possible for a county to provide hospital facilities for its citizens.''

In *Garner* v. *Lowery*, 221 Ark. 571, 254 S. W. 2d 680, we held that Garland County had the power to purchase an existing hospital, even though Amendment No. 17 only provides for the construction of a hospital.

In *Hollis* v. *Erwin, County Judge,* 237 Ark. 605, 374 S. W. 2d 828, we approved, under authority of Amendment No. 17 (as amended), the construction of two separate hospital units (included on one ballot), one being located in McGehee, and the other in Dumas.

It is obvious from these citations that this court has liberally construed the amendment, and we think in so doing, the intent of the people in passing Amendments No. 17 and No. 25 has been effectively carried out. Certainly, the construction of the building, here in question, will provide the people of Newton County with a well-equipped general hospital unit, and with a unit containing additional beds and equipment which will be used to provide the citizens of that county *additional medical services* for those who, because of illness, disease, or physical or mental infirmity, are unable to properly care for themselves.

Appellants have not specifically argued that there is no authority to equip the building in question (if there is authority for its construction), but in setting out the point relied upon for reversal, there is an allegation that this cannot be done under the authority of Amendment No. 17, as amended. This same contention was raised in *Hollis* v. *Erwin, County Judge, supra,* and we held contrary to the contention, stating: ''Certainly the equipping of the hospital is an essential part of its construction.''

Affirmed.

WARD, J., dissents.

PAUL WARD, Associate Justice (dissenting). It must be conceded that a county has no power to levy a tax (even by a vote of the people) to construct a public building for county purposes or county activities without

specific sanction by the state constitution. For example: It was necessary to amend the state constitution to give a county power, in specific and definite terms (a) to build a "County Court House" (Amendment No. 17); (b) to build a "County Jail" (Amendment No. 17); (c) to build a "County Hospital" (Amendment No. 25); (d) to maintain a "Public City Library" (Amendment No. 30); (e) to maintain, operate, and support a "County Hospital" (Amendment No. 32); (f) to build a "County Library" (Amendment No. 38); and, (g) to induce Industrial Development in a county (Amendment No. 49).

*There has been no constitutional amendment giving the county the right to levy a tax on the people to build a "County Nursing Home."* Nevertheless the majority opinion, by a process of reasoning and deduction which I am unable to follow, holds Newton County can levy a tax to construct a nursing home.

The majority say they are not deciding whether Newton County can (under Amendment No. 17) build *only* a nursing home. Obviously the reason they so state is that to do so would be like saying black is white.

In view of the above it must be assumed that the majority take the view that a nursing home is a necessary or essential part of a hospital. They can justify this view only by what we held and said in *Hollis v. Erwin, County Judge*, 237 Ark. 605, 374 S. W. 2d 828. There we said under Amendment No. 17 a county could levy a tax to "equip" a hospital. But it must be noted that we also said: "Certainly the equipping of the hospital is an *essential* part of its construction." (Emphasis added.)

Can it reasonably be said that a nursing home is an *essential* part of a hospital? As strongly as I feel the need of nursing homes and as much as I would like to help Newton County acquire one at the expense, largely, of the Federal Government, I cannot conscientiously hold it is an essential part of a hospital.

A hospital is one distinct entity and a nursing home is another distinct entity, as has been clearly indicated by the legislature. By Act 414 of 1961 the legislature de-

fined a *hospital* and separately defined a *nursing home;* they provided one *license* for a *hospital* and another *license* for a *nursing home;* and, they provided for an *advisory council* for a *hospital* and a different *advisory council* for a *nursing home.* By what occult process of deduction can the majority say a *nursing home* is an essential part of a *hospital* when all facts, experience, and observation are to the contrary? One dictionary definition of "essential" is "Important in the highest degree". Another definition is "Indispensable". It is common knowledge that for many years thousands of hospitals have operated (and are now operating) without the aid of a nursing home.

In an attempt to evade the obvious facts above set forth and to justify the result reached the majority resort to the *liberal construction rule* as set out in some opinions of this Court. I submit that even a casual examination of the cases relied on reveals no justification for the conclusion reached by the majority.

In *Walton* v. *Arkansas Construction Commission,* 190 Ark. 775, 80 S. W. 2d 927, we held that state bonds issued to complete construction of the State Hospital for Nervous Diseases at Benton were not prohibited by Amendment No. 20 of the state constitution. Said amendment did not, however, prohibit state bonds issued for an *"existing outstanding indebtedness of the State. . . ."* The proof showed (and the Court held) that the state bonds in question had been issued and sold before Amendment No. 20 was adopted. Any other decision would have been unreasonable.

In *Garner* v. *Lowery, County Judge,* 221 Ark. 571, 254 S. W. 2d 680, we held that under Amendment No. 17 (as amended) the county could purchase a hospital which was already built. The essence of our decision was that the purpose of the amendment was to enable the county to *acquire* a hospital—whether by *construction* or *purchase.* To make that decision support the view of the majority they would have to take the wholly untenable position that the purpose of Amendment No. 17 was to provide a nursing home.

In *Kervin* v. *Hillman, County Judge,* 226 Ark. 708, 292 S. W. 2d 559, we held that Amendment No. 17 (as amended) authorized the county to build a hospital at the county seat and two emergency stations at other locations. There was no contention (and could be none) that an emergency station was not an *essential* part of a hospital. The real contention was that the amendment "contemplates the construction of a single hospital unit to be located at the county seat". In answer to that contention we pointed out that Section 4 of the amendment provided that "more than one building or improvement may be embodied in such proceeding".

As previously stated, I would like very much to help the people of Newton County secure financial aid from the Federal Government for a nursing home (and they can do so by providing matching funds from a source other than a property tax) but I am not willing to help them exchange their constitutional birthright for a mess of pottage.