CARPET CITY, INC., an Oklahoma
Corporation, Petitioner,

v.

STILLWATER MUNICIPAL HOSPITAL
AUTHORITY, a Public Trust, and its
Board of Trustees, et al., Respondents.

No. 48353.

Supreme Court of Oklahoma.

May 20, 1975.

Pray, Scott & Livingston, By Donald F. Marlar, Tulsa, for petitioner.

Draper, Thomas & Hert, By Robert L. Hert, Jr., Stillwater, for respondents.

HODGES, Vice Chief Justice.

This is an Application to Assume Original Jurisdiction and Petition for Writ of Mandamus to direct the Stillwater Munici-

pal Hospital Authority, a public trust, created under 60 O.S.1971 § 176 et seq. and its Board of Trustees to comply with the provisions of the Public Competitive Bidding Act of 1974, 61 O.S.1974 Supp. § 101 et seq., the "Act".

The Trustees, incident to the construction of a new hospital facility, advertised and solicited bids based on architectural specifications.

After interviewing numerous carpet manufacturers and their representatives, the Trustees in late 1974, issued an advertisement for bid in three parts: (1) floor covering only; (2) installation only; (3) installation and floor covering. Eight bidders, including Carpet City, Inc. "Carpet City", submitted bids for the carpet and/or installation. The Trust awarded the contract to Don J. Greve "Greve".

It was decided at a Trustees meeting on March 4, 1975, to withdraw and re-solicit bids because the provisions of the Act had not been followed in awarding the bid to Greve.

Carpet City, unaware of the Boards decision, instituted an action in the District Court of Payne County, Oklahoma, on March 6, 1975, seeking to restrain the Board from signing a contract with Greve, and to have the Board directed to execute a contract with Carpet City. When Carpet City discovered the Trustees had decided to re-solicit bids, it did not prosecute its action.

At a later meeting of the Trustees on March 11, 1975, compliance with the Act, and the floor covering contract were discussed. The decision to re-solicit bids was re-affirmed.

On March 18, 1975, the Trustees again discussed the award of the carpet contract. The majority voted to reverse the actions of March 4, and of March 11, and to re-award the contract to Greve. The contract was executed on March 21, 1975, sixty days after it was first awarded.

Arguments were heard by the District Court at its disposition docket on March

21, 1975. The Court denied Carpet City's request for a temporary restraining order. Another hearing was set for March 24, 1975. Carpet City was allowed to modify its Petition to request injunctive relief.

At the hearing on March 24, 1975, the following stipulations were entered as a matter of record:

1. The date of the opening bids was 7:30 p. m., January 7, 1975.

2. On January 21, 1975, the Board awarded a contract to Don Greve.

3. That the Board of Trustees relied upon a summary of bids prepared by the architects dated January 16, 1975.

4. Carpet City was the low bidder on Antron II Carpets.

5. That the architects' summary contained no information concerning a five percent (5%) discount for payment within thirty (30) days on Carpet City's bid.

6. The Board of Trustees voted on March 4, 1975, to reject Don Greve's bid for failure to comply with 61 O.S.1974 Supp. § 101 et seq.

7. The Board voted on March 18, 1975, to re-award the contract to Don Greve and to waive until commencement of work the requirements of 61 O.S.1974 Supp. § 113[(B)](4).

8. That a contract was executed on March 21, 1975, subject to delivery at a later date of the bond required by 61 O.S.1974 Supp. § 113[(B)](1).

9. That the Board has not declared an emergency to exist under the provisions of 61 O.S.1974 Supp. § 130.

In addition to the stipulations, one of the respondents testified at the March 18 Trustees meeting the Trustees had voted to waive the requirement for a maintenance bond as set out in 61 O.S.1974 Supp. § 113[(B)](3).

The Respondents demurred to the proceedings in the District Court on the basis that the Act was not intended to apply to acquisitions such as floor covering. The court overruled the demurrer, but after hearing, entered judgment denying the temporary and permanent injunction requested by Carpet City.

■ There are four questions presented concerning the applicability of the Act. The first is whether a contract for carpet, installation, or carpet and installation to be utilized in the construction of a hospital facility, which is a public trust, is subject to the provisions of the Act.

It is urged by respondents that the sale and installation of carpet in a public building is not covered by the Act because carpet and its installation has a life expectancy of 5 years. It is argued that to fall within the definition of construction, the items must become an integral permanent part of the structure intended to last the useful life of the structure. We do not agree, especially where the carpet and installation is a part of the specifications for the construction of the hospital.

It is provided in 61 O.S.1974 Supp. § 103 that all public construction contracts shall be let and awarded in accordance with the provisions of the Act.

Public construction contract is defined by 61 O.S.1974 Supp. § 102(4) as meaning:

" * * * any contract, exceeding Two Thousand Five Hundred Dollars ($2,500.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to the same."

The Trust is covered by the Act. The statutory definition of "public agency" as promulgated by 61 O.S.1974 Supp. § 102(3) expressly includes any public trust or any public entity specifically created by the statutes of the State of Oklahoma.

The facts indicate that the carpeting is to be permanently affixed to the sub-floors in a construction project for a public building. It thus becomes a part of the realty. See United Benefit Life Insurance Company v. Norman Lumber Co. 484 P.2d 527 (Okla.1971).

■ The term construction with reference to a building means to put together the materials and constituent parts used therein in their proper place and order. Scharff v. Southern Illinois Construction Co., 115 Mo.App. 157, 92 S.W. 126, 130 (1905); Olney v. Hutt, 251 Iowa 1379, 105 N.W.2d 515, 520 (1960). A hospital is more than a mere building of four walls and a roof. See Hollis v. Erwin, 237 Ark. 605, 374 S.W.2d 828, 833 (1964). Certainly where the specifications of the architect require carpet and its installation as an essential part of the construction of a public building, the bids for it are subject to the provisions of the Act.

■ The next problem presented is whether the Trust complied with the Act when it accepted a bid it had previously rejected. We find that it did not. To allow such an action would permit effective circumvention of the Act, and prevent free and open competitive bidding.

The Act, 61 O.S.1974 Supp. § 119, provides:

"By majority action of the governing board of the awarding public agency, the awarding public agency shall have the right to reject any or all bids and solicit bidders again as therein provided if in the opinion of the governing body of the public agency, the best interests of the people of the State of Oklahoma would be best served by so doing."

If the awarding public agency rejects all bids, it must solicit bidders again as provided by the Act, and may not re-award a bid unless it is re-solicited. An exception is provided by 61 O.S.1974 Supp. § 130. This requires two-thirds (⅔) vote of all members of the governing body that an emergency as specifically defined in the Act exists, in which case the provisions of the Act pertaining to notice and bids are not applicable. It was stipulated that there was no emergency in the case before us. Nor did the Trustees choose to award the bid to other than the lowest bidder in accord with 61 O.S.1974 Supp. § 117.

■ The question is also posed as to whether an awarding public agency by re-awarding a bid may extend the time requirements of 61 O.S.1974 Supp. § 113(A):

"Upon award to a successful bidder, a contract embodying the terms set forth in the bidding documents shall be executed within ten (10) days from the date of awarding of the contract by the awarding public agency and the successful bidder."

The Act in 61 O.S.1974 Supp. § 111 states:

"The awarding of a contract to the lowest responsible bidder or bidders shall be made within thirty (30) days after the opening of bids unless the governing body of the awarding public agency, by formal recorded action and for good cause shown, provides for a reasonable extension of that period, which extension period shall not in any event exceed fifteen (15) days where only state or local funds are involved, or not to exceed ninety (90) days on any award of contract for the construction of a public improvement where funds are utilized which are furnished by an agency of the United States Government."

It is contended by respondents that these provisions are unconstitutional because the title of the Act does not cover the execution and award of contracts. We do not agree. We find that the title of the Act is sufficiently broad to cover these sections; they are mandatory; and the time cannot be extended by re-awarding the bid.

■ The final issue is whether the Trustees may waive the bond and insurance required by 61 O.S.1974 Supp. § 113(B)(3), (4). We find they cannot.

■ We have noted on numerous occasions that the use of the word shall in the statutes connotes a mandatory directive. We find it is mandatory as utilized by 61 O.S.Supp.1974 § 113(B)(3), (4). See Oklahoma Alcoholic Beverage Control Board v. Moss, 509 P.2d 666 (Okl.1973).

■ It may be that some of the provisions of the Act are unnecessarily stringent. If so, this is a matter for the legislature to correct. We feel the legislative

intent that the Act apply to factual situations such as this is inherent in 61 O.S. 1974 Supp. § 131, which prevents splitting contracts into partial contracts to avoid the requirements of the Act. The Act was not adopted to be circumvented. It is to be strictly followed.

█ In awarding or denying writs of mandamus, courts exercise judicial discretion and are governed by what seems to be necessary and proper to be done under the facts of each case for the attainment of justice. Austin v. State Board of Education, 497 P.2d 218 (Okla.1972). We believe the petitioner does not have an adequate remedy at law, and that compliance with the Act is of public interest not only to the citizens of the City of Stillwater, where extended litigation might impair public welfare by delaying construction of the hospital facility, but to the citizens of the State of Oklahoma in general. We therefore, Assume Original Jurisdiction and grant the Writ of Mandamus.

WILLIAMS, C. J., and DAVISON, BARNES, SIMMS and DOOLIN, JJ., concur.

IRWIN and LAVENDER, JJ., dissent.